[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in this action (Juros) commenced this action to foreclose on a mechanic's lien for engineering services in connection with subdividing a parcel of land approximately twenty four acres in size owned by the defendant (York). York filed a counterclaim against Juros alleging unfair trade practices in violation of General Statutes § 42-110, et. seq., and also claiming a violation of General Statutes § 49-51, which provides for damages for failure to discharge an invalid mechanic's lien upon request to do so.
At the conclusion of the plaintiff's case in chief, the defendant moved to dismiss both counts of the complaint (alleging services rendered for the defendant which were unpaid and unjust enrichment), for failure to prove a prima facie case, in accordance with practice Book § 302. That motion was granted on December 9, 1994 and York thereafter proceeded on his counterclaim. CT Page 1698-J
The factual background of this case is as follows:
York owned the tract of land in question, having purchased it in or around 1947. In the early to mid-1980's, York worked as a part-time salesman (independent contractor) selling life insurance for one Ezra Harvin, an insurance agent. Harvin and York entered into discussions about the possibility of subdividing and developing the property. York was not interested in acting as a developer but would consider selling it.
The discussions between York and Harvin led to an option agreement dated December 6, 1989 whereby Harvin paid York $25000 for an option to buy the tract within one year, for $350,000 (with credit for $25000 if the option was exercised). The agreement provided that Harvin at his expense would obtain any necessary zoning and site plan approvals. York was to incur no expenses in connection with the subdivision and the agreement did provide for a lot release payment schedule with York taking back a purchase money mortgage under certain conditions.
Prior to signing the option agreement with York, Harvin CT Page 1698-K entered into an agreement with the plaintiff Juros wherein Juros loaned Harvin $5000. It was further agreed that Juros would do the civil engineering work necessary to subdivide the tract and get the required approvals. Harvin and Juros agreed that Juros would defer his fees for engineering services in return for becoming an equity partner with Harvin. The transactions between Juros and Harvin took place prior to Harvin's agreement with York and Juros was aware of the option agreement between Harvin and York. Harvin and Juros entered into a written agreement on February 8, 1989 wherein Juros became a 20% equity partner with Harvin, who held 80%.
The agreement provided that Juros and Harvin would split the liabilities 80% to 20%, and if a profit were made, the up front money paid by Juros ($5000) and Juros' engineering fees would be paid as liabilities, with any remaining profit to be spit 80% to 20%.
York was never made aware of the agreement made between Juros and Harvin and believed that Juros was the engineer hired by Harvin to do the subdivision layout. Juros never sent any invoices to York for the work he did. CT Page 1698-L
Ultimately, probably in part at least because of the declining real estate market, the option was not exercised and Harvin went into bankruptcy.
Thereafter Juros repeatedly called York demanding either that York pay him more than $40,000 for his engineering services or, in the alternative, to renegotiate a sale of the property to him (Juros). In one of his conversations with Harvin, Juros told Harvin that he might put a lien on the property to force York to deal with him. At that point York was willing to sell the property for $350,000 — the original contract price with Harvin, but was no longer willing to enter into a per lot release pay-out arrangement. Juros wanted York to renegotiate a lower price and terms and in the final call made to York by Juros, the conversation became heated to the point where Juros told York he would get the land by litigating throughout York's lifetime. York is presently seventy-two years old.
York was shocked by the name calling and threatening tone and hung up on Juros. A friend of York's who was in York's home when CT Page 1698-M this last call was made testified he was extremely agitated and upset, that he became pale, and held the phone from his ear because Juros was shouting so loudly. The incident left York depressed and the incident still bothers him emotionally.
The Court concludes that the defendant is entitled to damages under the provisions of both § 49-51 and § 42-110 et seq.
On April 15, 1994, York's attorney sent a certified return receipt letter to Juros demanding the release of his mechanic's lien. The lien was not released until December 15, 1994, after the Court had dismissed the complaint.
Juros was acting as an equity partner of Harvin with full knowledge of the agreement that Harvin had with York whereby York was not to be liable for any costs of the project. Further any services performed in connection with the subdivision process were concluded in January 1991 when zoning approval was obtained. Any billings thereafter were incurred in Juros' effort to revitalize or renegotiate a new option agreement.
Section 49-51 provides that where the court finds a lien was CT Page 1698-N filed without just cause (as is the case here) it may allow damages at the rate of $100 per week for each week after the expiration of thirty days but not exceeding $5000 or an amount equal to the loss sustained as a result of the failure to discharge the lien, (including attorney's fees), whichever is greater.
In this case the loss (attorney's fees) exceeds $5000. Accordingly, the Court awards $5000 pursuant to this statute.
Section 42-110b prohibits unfair or deceptive acts or practices in the conduct of any trade. The Court concludes that Juros' actions in this matter were unfair and deceptive. He was in business as a consulting engineering firm. His filing of the mechanic's lien knowing York had no liability to him, his claim that he was a sub contractor when he was in actuality an equity partner, his statement that he would file a lien in order to make York deal with him, his threat to drag out the litigation until York died, are egregious examples of unfair and deceptive dealing.
The defendant has incurred legal fees and out of pocket costs totalling $11,193.49 (defendant's exhibit 12). That bill does not CT Page 1698-O include the final day of trial time. The Court adds $375.00 to the above exhibit for that and awards $11,568.49 plus costs in accordance with a bill of costs if submitted.
It is the intention of the Court to award a total of $11,568.49 plus costs, not $11,568.49 plus $5000. Under all the circumstances of this case, the Court, in its discretion considers this award to be just and reasonable.
Accordingly, judgment shall enter for defendant Frederick H. York, Jr. on his counterclaim in the amount of $11,568.49 plus costs.
Klaczak, J.